UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MIKE F.,[1]

        Plaintiff,

   v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

Case No. 3:17-cv-01667-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Mike F. ("plaintiff"), seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is not supported by substantial evidence, it is REVERSED and REMANDED for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member(s).

1 – OPINION AND ORDER

## BACKGROUND

Born in August 1979, plaintiff was 29 years old on the alleged onset date. Tr. 30, 97. He has a high school education and has completed some college. Tr. 30, 45. Plaintiff has past work experience as a wafer polisher, computer mechanic, inventory clerk, and computer parts salesperson. Tr. 29.

In October 2009, plaintiff began experiencing paresthesia and optic neuritis. Tr. 359, 373. The next month, plaintiff continued experiencing numbness and clumsiness with his hands. Tr. 384. Imaging revealed white matter lesions on his spinal cord. *Id.* At that point, plaintiff was diagnosed with multiple sclerosis. Tr. 405. His multiple sclerosis was causing "significant sensory abnormalities." Tr. 418. In the following months, plaintiff experienced increasing weakness and numbness. Tr. 402, 404.

Plaintiff went long stretches without seeing a neurologist because he could not afford the co-pays. Tr. 55-56, 473. He was eventually terminated from his treating neurologist's care for non-payment. Tr. 454. In 2012 and 2013, plaintiff continued to suffer from weakness, numbness, and loss coordination in his arms and hands. Tr. 400, 425, 427, 442, 444. During severe flare-ups, plaintiff had almost no sensation in his hands and his dexterity was limited. Tr. 239. He explained that he had trouble with buttons and zippers, was no longer shaving, and had difficulty cleaning himself after going to the bathroom. Tr. 241. Plaintiff was also experiencing urinary incontinence, fatigue, and difficulty walking due to dizziness. Tr. 378, 400, 427.

By the end of 2013, plaintiff was no longer able to perform yard work, mow the lawn, garden, shave, or play video games. Tr. 61, 289-90. Activities that used to take him a few minutes, like washing the dishes, would take him over an hour. Tr. 319. He constantly felt weak and tired, had trouble getting around, and experienced vertigo and dizzy spells. Tr. 293, 314,

318, 322, 336, 442. Additionally, plaintiff's productivity at work declined to a significant degree. Tr. 72-75, 310. Indeed, his employer explained that the only reason he did not fire plaintiff was because they were friends, noting that "it was costing [his] company money to keep [plaintiff] around." Tr. 73, 75-76. During that period, due to his impairments, plaintiff regularly came in to work late, left early, took rests on the couch during work hours, and missed work for months at a time. Tr. 73-74. In January 2014, plaintiff stepped down, because even under such accommodating circumstances, he was no longer able to do the work. Tr. 448.

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on December 1, 2009, alleging disability beginning August 1, 2009. Tr. 18. Plaintiff's claims were initially denied on March 16, 2010, and those denials were not appealed. *Id.* Plaintiff filed a new application for DIB on May 30, 2013. *Id.* He alleged disability beginning on August 1, 2009, based on multiple sclerosis. Tr. 97. His application was denied initially and upon reconsideration. Tr. 152-56, 158-60. On May 16, 2016, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 39-95. On July 6, 2016, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 18-31. After the Appeals Council denied his request for review, plaintiff filed a complaint in this court. Tr. 1-6. The ALJ's decision is therefore the Commissioner's final decision subject to review by this court. 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the

3 – OPINION AND ORDER

evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The reviewing court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. This sequential analysis is set forth in the Social Security regulations, 20 C.F.R. §§ 404.1520, 416.920, in Ninth Circuit case law, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)), and in the ALJ's decision in this case, Tr. 19-20.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity after the alleged onset date. Tr. 20.

At step two, the ALJ found that plaintiff has the following severe impairments: multiple sclerosis, neurocognitive disorder, organic mental disorder, and affective disorder. Tr. 21.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 22. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined that he could perform light work with the following limitations: he could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he could occasionally climb ladders, ropes, and scaffolds; he could engage in frequent bilateral fingering, he was unable to have any exposure to extreme heat, he could have occasional exposure to hazards such as unprotected heights and moving mechanical parts; he was limited to the performance of simple, routine tasks; he was limited to simple work-related decisions; and he was limited to occasional interaction with the public. Tr. 23.

At step four, the ALJ found plaintiff could not perform his past relevant work as a wafer polisher, computer mechanic, inventory clerk, or computer parts salesperson. Tr. 29.

At step five the ALJ determined that plaintiff could perform jobs that exist in significant numbers in the national economy, including office helper, router, and electronics worker. Tr. 30-31.

## DISCUSSION

Plaintiff argues that the ALJ (1) improperly discounted his subjective symptom testimony; (2) erroneously assessed the medical opinions of Dr. Hills, Dr. Smoot, Dr. Lewy, and Dr. Hennings; (3) improperly rejected the lay witness testimony of his wife and employer; and (4) and improperly crafted the hypothetical to the VE.

**I.  Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that his multiple sclerosis was marked by flare-ups of diminished sensation in his hands, which caused him to drop things. Tr. 47. He described the reduced sensation as feeling "like I was holding two spatulas and trying to do stuff with spatulas. I couldn't button my pants. I couldn't really do much of anything." Tr. 63. He explained that he needed assistance with eating, dressing, bathing, and going to the bathroom. Tr. 241, 288. He suffered from incontinence that caused him to soil himself at work on multiple occasions. Tr. 65.

Plaintiff recounted that during severe flare-ups he would miss work for months at a time. Tr. 53. He described his flare-ups as having a ratcheting effect resulting in an unrelenting physical decline. He explained that during each attack he would get "a lot worse," and although he would "get marginally better" after the attack, he would never recover to the level he had been at prior to the attack. Tr. 62. By late 2013, he could not walk more than a few blocks without needing a rest. Tr. 293. Plaintiff experienced double vision, vertigo, and dizzy spells. Tr. 63.

His multiple sclerosis also caused cognitive problems, including difficulties with memory. Tr. 56.

### A. Looking for Work

The ALJ found that plaintiff's "allegations of debilitating [multiple sclerosis] symptoms during the period at issue are inconsistent with his report in October 2009 that he was looking for work." Tr. 26. However, the mere fact that plaintiff attempted to find a job is insufficient to discredit him. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("That [the claimant] sought employment suggests no more than that he was doing his utmost, in spite of his health, to support himself."). Here, as in *Webb*, plaintiff was trying his best to support himself. In fact, the record reflects that plaintiff consistently struggled financially and had difficulty affording his expensive medical treatment. Tr. 400, 428, 454, 473. Thus, plaintiff's attempt to find employment is not a clear and convincing reason to discount his credibility.

The ALJ also noted that at one point plaintiff was working up to 30 hours per week. Tr. 26-27. While plaintiff may have been contracted or scheduled to work 30 hours per week, the record reflects that in reality he worked far less. From 2010 to 2014, plaintiff was paid $30.00 per hour for his work at Bolt; however, he only earned approximately $700 per month. Tr. 20, 282. This shows that plaintiff was working, on average, 23 hours per month, or only roughly six hours per week. Therefore, plaintiff's purported ability to work 30 hours per week is not a clear and convincing reason for discounting his symptom testimony.

### B. Conservative Treatment

The ALJ discredited plaintiff's testimony because he "was offered steroids to shorten the course of his vision loss, but he declined." Tr. 21. The record reflects that plaintiff attempted treatment with steroids, but it made him feel "jittery" and caused difficulty with sleep. Tr. 405.

Later, plaintiff declined steroids because he could not afford them. Tr. 400. Although an unexplained or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), ALJs are prohibited from rejecting a claimant's symptom testimony based on a lack of treatment when the record establishes that the claimant could not afford it. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). In this case, there is ample evidence in the record that plaintiff was unable to afford medications. Tr. 400, 428, 454, 473. Accordingly, plaintiff's alleged conservative treatment was not a clear and convincing reason for discounting his subjective symptom testimony.

  C. **Lack of Evidence**

The ALJ found that the record does not document significant deficits in manipulative function. Tr. 25. However, plaintiff often reported numbness, weakness, and lack of dexterity in his hands. Tr. 239, 288, 384, 404, 417, 427, 442, 444, 452. Moreover, the record reflects that due to numbness in his hands, plaintiff experienced clumsiness and lack of coordination, frequently dropped objects, had difficulty using utensils, struggled with bathing, needed help cleaning himself after going to the bathroom, struggled with buttons and zippers, was unable to shave, and burned himself while trying to solder equipment at work. Tr. 241, 247, 288, 290, 309, 318, 384, 400, 427-28. Accordingly, the ALJ's finding is not supported by the record.

The ALJ also found that the "record documents no complaints of bladder incontinence during the period at issue." Tr. 26. To the contrary, the record reflects that in 2012 plaintiff reported loss of bladder control to Dr. Hills. Tr. 427. Plaintiff also noted in his function report that he had some problems with incontinence. Tr. 290. At the hearing, plaintiff's employer corroborated that plaintiff had a history of incontinence and soiling himself at work. Tr. 76. As

such, the ALJ's finding is not supported by the record. The alleged lack of evidence, therefore, does not constitute a clear and convincing reason for discounting plaintiff's testimony.

D.      Harmless Error

The Commissioner argues that any error was harmless because the ALJ provided two reasons for discounting plaintiff's testimony, which plaintiff did not challenge. Defendant's Brief, ECF #14, 9 ("Elimination of any one reason does not mean the ALJ's entire credibility assessment is improper, so long as the remaining credibility considerations are valid and based on substantial evidence.") (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 n.4 (9th Cir. 2008)). However, the two rationales cited by the Commissioner are also unsupported by the record.

1.      Activities of Daily Living

The Commissioner argues that the ALJ correctly relied on plaintiff's activities of daily living to discount his symptom testimony. To properly discredit a claimant on that basis, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284 (citing *Dodrill*, 12 F.3d at 918). Here, although the ALJ listed a number of plaintiff's activities, she did not explain what testimony was contradicted by such activities. Tr. 26-27. Accordingly, to the extent the ALJ implicitly found plaintiff's activities contradicted his testimony, that finding is insufficient as a matter of law.

Moreover, by 2013, plaintiff was no longer capable of performing the activities cited by the ALJ. In her decision, the ALJ noted plaintiff's capacity to do yard work, garden, mow the lawn, cook, walk to clients' houses, and work 30 hours per week. Tr. 26. However, the record reflects that in 2013, plaintiff could no longer walk to clients' houses, and he could no longer perform yard work, mow the lawn, or garden. Tr. 58-59, 61. In that same timeframe, plaintiff's

ability to cook was reduced to merely making sandwiches and frozen dinners. Tr. 290. As discussed above, although plaintiff may have been contracted to work 30 hours per week, his actual productivity was only approximately six hours per week, and by January 2014 he was unable to continue working. Tr. 20, 282. Furthermore, to the extent plaintiff was present at work, he was unproductive. Tr. 72-75. He came in late, his boss had to double-check his work, and he would forget to do simple things. *Id.* Plaintiff's employer testified that "it was costing [his] company money to keep [plaintiff] around," but he kept plaintiff on because they were friends. Tr. 73, 75. Accordingly, plaintiff's activities of daily living did not constitute a clear and convincing reason for discounting plaintiff's testimony; as such, it does not render harmless the ALJ's other errors in assessing plaintiff's credibility.

### 2. Inconsistent Statements

The ALJ found that the "record documents little medical treatment overall and the record is inconsistent with [plaintiff's] testimony at the hearing that he always took medications and he was consistently seeking treatment." Tr. 25. Notably, plaintiff testified that he always took his *prescribed* medications. Tr. 54-55. That statement is consistent with the record. Dr. Stuckey observed that plaintiff "routinely complied" with his medications, and the record reflects that even during periods where plaintiff could not afford to see a neurologist, he continued refilling and taking his Rebif prescription. Tr. 449, 473.

The Commissioner argues that plaintiff's statement that he had not needed Solumedrol steroids for two years undermines his claim that he consistently took his prescribed medications. However, there is nothing in the record indicating that plaintiff was prescribed Solumedrol during that period. In fact, the record indicates that Solumedrol steroids were prescribed on short term bases to address acute flare-ups. Tr. 377-78, 427. Even during periods where plaintiff did

not need Solumedrol, he continued to take his prescription Rebif. Moreover, a review of the record reveals that with the exception of one or two isolated periods, plaintiff took Rebif continuously from 2009 through late 2015. Tr. 402, 404-05, 419, 422, 428, 443, 449, 452, 455, 457, 472-73, 475, 489. Therefore, plaintiff's purportedly inconsistent statements do not constitute a clear and convincing reason for discounting his subjective symptom testimony. Although the ALJ's errors in the credibility analysis may be harmless as long as the ALJ provided at least one clear and convincing reason for discounting the claimant's symptom testimony, here, the ALJ failed to provide any such reasons. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Accordingly, the ALJ's errors were not harmless.

The Commissioner argues that by failing to challenge the two rationales discussed above, plaintiff has waived any argument on these issues. However, the ALJ did not expressly rely on the activities of daily living rationale, and in any event, neither rationale is supported by substantial evidence. As such, the Commissioner's argument is unavailing.

## II.     Medical Opinion Evidence

Plaintiff argues that the ALJ improperly assessed the medical opinions of Dr. Hills, Dr. Smoot, Dr. Lewy, and Dr. Hennings. The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir.

2012).  Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

A. **Dr. Hills' Opinion**

Although the ALJ discussed some of Dr. Hills' findings, she did not assign any weight to them as required by social security regulations.  20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").  By failing to provide any reasoning for rejecting Dr. Hills' opinion, the ALJ deprived this court of its ability to ensure meaningful review.  *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); *see also Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

The Commissioner argues that because Dr. Hills did not assess any functional limitations, there was nothing for the ALJ to either incorporate or reject.  This, however, was not the reason the ALJ rejected Dr. Hill's opinion and, therefore, is not a valid basis to affirm the ALJ's non-disability decision.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (The Court is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").  Moreover, Dr. Hills opined that plaintiff was unable to work due to clumsiness and weakness.  Tr. 428.  Dr. Hills' opinion was based on specific findings that plaintiff was experiencing loss of coordination in the right arm, moderate weakness in the left arm, and paresthesias in both legs.  Tr. 427.  While it may be true that Dr. Hills did not list specific functional limitations, "an ALJ may not simply reject a treating physician's opinions

on the ultimate issue of disability." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F. 3d 1195, 1202-03 (9th Cir. 2001)).

      **B.     Dr. Smoot's Opinion**

The ALJ gave little weight to Dr. Smoot's opinion because he did not examine plaintiff until two years after plaintiff's date last insured. Tr. 28. This was a proper basis for rejecting Dr. Smoot's opinion. *See Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (the opinion of a medical provider who examined a claimant after his insured status expired is entitled to less weight).

      **C.     The Opinions of Dr. Lewy and Dr. Hennings**

Plaintiff argues that the ALJ improperly gave great weight to the opinions of non-examining physicians Dr. Lewy and Dr. Hennings. Plaintiff contends that the ALJ erred in relying on the opinions of Dr. Lewy and Dr. Hennings because they were "non-treating sources." Plaintiff's Brief, ECF #13, 12. However, the ALJ may rely on the opinions of non-treating and non-examining sources. *See Thomas*, 278 F.3d at 957.

Plaintiff also argues that because the ALJ rejected Dr. Smoot's opinion due to the fact that he began treating plaintiff after the date last insured, it was error to credit Dr. Hennings' opinion which was also offered after the date last insured. Notably, the record reflects that Dr. Smoot did not begin treating plaintiff until *more than two years* after the date last insured, whereas Dr. Hennings provided his opinion *less than two months* after the date last insured. Tr. 20, 133, 490. Moreover, an ALJ is not required to discuss in detail or provide explanations for accepting medical opinions; rather, the ALJ need only offer reasons when rejecting them. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). As such, plaintiff has not demonstrated that the ALJ erred in giving great weight to the opinions of the non-examining doctors.

### III. Lay Witness Testimony

Plaintiff argues that the ALJ improperly rejected the lay witness testimony of his wife and his employer. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (remaining citation omitted)). Further, the reasons provided must also be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony is harmless. *Molina*, 674 F.3d at 1121-22.

#### A. Plaintiff's Employer

Plaintiff's employer testified that when plaintiff first started working for him he was "on point" and "very valuable" to the company. Tr. 71-72. However, he explained that from 2010 to 2014, plaintiff went downhill. Tr. 72. He also recounted that plaintiff's ability to walk progressively worsened. *Id.* Plaintiff's employer observed that plaintiff had issues with incontinence and that he sometimes soiled his clothing while at work. Tr. 76. Additionally, he observed that due to plaintiff's diminished dexterity, he was burning himself with the soldering gun. Tr. 72. Plaintiff's employer noted that plaintiff got weaker and his energy levels declined to the point he needed to take rests on the couch during the work day. Tr. 73. He explained that keeping plaintiff on staff was costing the company money, and when plaintiff took a leave of

absence due to his impairments, "it was almost a relief because he wasn't really producing any income." Tr. 73. He acknowledged that the only reason he did not fire plaintiff was because he was a friend. Tr. 75-76.

The ALJ rejected plaintiff's employer's testimony based on the assertion that plaintiff's incontinence was not supported by the medical record. Tr. 29. However, as discussed above, the medical record reflects that plaintiff was suffering from bladder control issues. Tr. 427. Accordingly, this was not a proper basis for rejecting plaintiff's employer's testimony.

The ALJ also noted that plaintiff's employer stated in a function report that as of October 2013, plaintiff remained capable of walking "one-half mile before needing to rest." Tr. 29. However, the 2013 statement was consistent with the employer's hearing testimony that plaintiff had trouble walking far and eventually could only go "as far as a half mile." Tr. 72. As such, the ALJ failed to provide a proper basis for rejecting plaintiff's employer's testimony.

### B. Plaintiff's Wife

Plaintiff's wife testified that plaintiff's multiple sclerosis was unpredictable and there was no way to know when plaintiff was going to have flare-ups. Tr. 80-81. She explained that because of the diminished sensation in plaintiff's hands, he drops things and burned himself. Tr. 81. She reported that the diminished sensation also made it difficult for plaintiff to eat, bathe, and clean himself after going to the bathroom. Tr. 248. Plaintiff's wife reported that plaintiff's multiple sclerosis caused problems with his balance. Tr. 81, 321. She explained that his flare-ups can cause problems with mobility that last for days. Tr. 318. Moreover, she reported that as of late 2013, plaintiff was constantly feeling tired and weak. Tr. 322.

The ALJ found that plaintiff's wife's testimony was consistent with the record; however, the ALJ concluded that her testimony regarding the degree of plaintiff's impairments was

"excessive" in light of the record. Tr. 29. The ALJ's reasons for rejecting lay-witness testimony must be "specific." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Here, the ALJ's reason was vague. Accordingly, the ALJ erred in failing to provide legally sufficient reasons for rejecting plaintiff's wife's testimony.[2]

## IV. Hypothetical to the VE

The ALJ was required to include all of plaintiff's limitations in the hypothetical questions to the VE. *Valentine v. Commissioner*, 574 F.3d 685, 690 (9th Cir. 2009) ("The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, must set out all the limitations and restrictions of the particular claimant." (internal quotations omitted)). Because the ALJ improperly rejected plaintiff's testimony, Dr. Hills' opinion, and the lay-witness testimony, she failed to incorporate all of plaintiff's limitations in the hypothetical questions to the VE. As such, the VE's testimony has no evidentiary value, and it was error for the ALJ to rely on it. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value.") (quoting *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).

## V. Remand

When a court determines the Commissioner erred in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without

---

[2] The Commissioner also argues that the errors in rejecting the testimony of both lay witnesses were harmless because they provided testimony that was similar to plaintiff's testimony. Where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and a lay witness has not described limitations beyond those alleged by the claimant, the failure to provide germane reasons for rejecting the lay testimony may be harmless error. *Molina*, 674 F.3d at 1121-22. However, as discussed above, the ALJ failed to provide clear and convincing reasons to reject plaintiff's symptom testimony. As such, the errors in rejecting the testimony of plaintiff's employer and plaintiff's wife are not harmless.

remanding the cause for a rehearing." *Treichler*, 775 F.3d at 1099 (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

Here, the first requisite of the *Garrison* test is met. As discussed above, the ALJ improperly discounted plaintiff's subjective symptom testimony, erroneously assessed the medical opinion of Dr. Hills, improperly rejected the lay witness testimony of plaintiff's wife and his employer, and failed to include all of plaintiff's limitations in the hypothetical to the VE.

Regarding the second factor, in assessing whether the record is fully developed, the court looks to whether there are "*significant factual conflicts* in the record between [the claimant's] testimony and objective medical evidence." *Treichler*, 775 F.3d at 1104 (emphasis added). The Commissioner asserts that plaintiff cannot meet the second requisite, but fails to articulate any significant conflicts in the record. The Commissioner also contends that plaintiff cannot be disabled because the ALJ properly relied on the opinions of Dr. Lewy and Dr. Hennings. Notably, however, both Dr. Lewy and Dr. Hennings are psychologists who evaluated plaintiff's mental capacity. As discussed above, the debilitating aspects of plaintiff's multiple sclerosis are physical in nature. Tr. 115, 133. The Commissioner further argues that plaintiff cannot be disabled because he was able to work for 30 hours per week. However, as discussed above, the

record reflects that plaintiff, on average, was only able to work approximately six hours per week. Tr. 20, 282. Finally, the Commissioner makes a vague reference to plaintiff's "benign or normal" treatment notes. The Commissioner, however, ignores the unpredictable fluctuating nature of plaintiff's flare-ups as well as the fact that plaintiff repeatedly reported numbness, weakness, and lack of dexterity in his hands, in addition to vertigo, dizziness, and fatigue. *See Garrison*, 759 F.3d at 1017 (citing *Holohan*, 246 F. 3d at 1205); Tr. 239, 288, 293, 336, 338, 378, 384, 400, 404, 417-18, 425, 427, 442, 444, 449, 452.

Moreover, the "crucial question" in this case is the extent to which plaintiff's combined impairments would interfere with his ability to sustain work activities on a "regular and continuing basis." SSR 96-8p; *see Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (holding the second requirement will not be satisfied if "the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistencies between his testimony and the medical evidence in the record," because "[t]hese are exactly the sort of issues that should be remanded to the agency for further proceedings") (citation omitted). Plaintiff's testimony and the lay testimony by plaintiff's employer and wife demonstrate that plaintiff would miss work for months at a time, consistently be late, need to leave early, and require rests during the work day. Tr. 53, 73-74. This testimony is consistent with Dr. Hills' conclusion that plaintiff's multiple sclerosis rendered him unable to work. Tr. 428. As such, the record demonstrates that plaintiff was unable to sustain work activities on a "regular and continuing basis." SSR 96-8p ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). The "crucial question" therefore has been resolved, and no significant conflicts in the medical record remain. *Brown-Hunter,* 806 F.3d at 495; *Treichler*, 775 F.3d at 1104.

As to the third factor, if the discredited evidence were credited as true, the ALJ would be required to find plaintiff disabled. On March 7, 2012, Dr. Hills determined that plaintiff's impairments rendered him unable to work. Tr. 428. Plaintiff's testimony and the testimony of the lay witnesses show that plaintiff's multiple sclerosis flare-ups cause him to miss work for months at a time, leaving him unable to sustain work activities on a "regular and continuing basis." SSR 96-8p. Moreover, the VE testified that if plaintiff were to miss 16 hours of work per month, whether that was two full days or "coming in substantially late or leaving substantially early," then plaintiff would not be able to maintain competitive employment. Tr. 92. The record reflects that, as of at least 2012, even during the periods where plaintiff was able to go to work, his impairments caused him to arrive to work at least an hour late on a daily basis, he needed to rest for a "few hours" during the workday, and at times he could only sustain work for three or four days per week. Tr. 67, 74, 243, 282. Accordingly, at least as of 2012, plaintiff would miss more than 16 hours of work per week and would therefore be unable to sustain competitive employment.

While it is clear from the record that plaintiff was disabled under the Act by March 7, 2012, it is not clear whether plaintiff became disabled prior to that date.[3] *See Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010) (affirming remand to determine onset date where the ALJ did not address the issue and evidence in the record did not establish onset date); *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015) (finding that "[w]hen further proceedings are

---

[3] Plaintiff's treating physician, Dr. Hills, concluded that plaintiff was unable to work as of his March 7, 2012, appointment. Tr. 428. That conclusion was consistent with plaintiff's employer's testimony that plaintiff, by that point in time, was no longer able to function adequately and was a burden on the company. Tr. 76. Dr. Hills' assessment is also supported by plaintiff's wife's testimony that in 2012, plaintiff began missing work days unpredictably, as well as plaintiff's testimony that he contemporaneously began missing work for months at a time. Tr. 62-63, 80.

19 – OPINION AND ORDER

necessary to determine the onset date, it is appropriate to remand for those proceedings"); *see also Williams v. Colvin*, 2013 WL 1326212, at *6 (E.D. Cal. Mar. 29, 2013) (concluding that the claimant became disabled, at the latest, as of the date that the treating physician rendered her opinion, but remanding for proceedings to determine the precise onset date); *Henkle v. Colvin*, 2014 WL 880370, at *5 (E.D. Cal. Mar. 5, 2014) (same). Accordingly, the court remands the matter for further administrative proceedings consistent with this order and solely for the limited purpose of determining the precise onset date of plaintiff's disability. *See Dominguez*, 808 F.3d at 409; *see also Williams*, 2013 WL 1326212, at *6 (remanding for limited purpose of determining the precise onset date); *Buonlamperti v. Colvin*, 2013 WL 856737, at *9-10 (E.D. Cal. Mar. 6, 2013) (same).

## CONCLUSION

For these reasons, the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED October 9, 2018.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge